The plaintiff, Ronen Adato, obtained a declaratory judgment stating that he is not required to pay a condominium assessment for reconstruction of a six-car parking garage that he has no right to use. The trustees appeal.
Background. The 234 Beacon Street Condominium (condominium) was created by a master deed dated June 30, 1978, and recorded in the Suffolk County registry of deeds. The condominium includes nine units and is located at the corner of Beacon and Dartmouth Streets in Boston.[2] Adato owns and lives in unit 5B.
In addition to the structure housing the residences, the condominium includes at ground level a narrow passageway designated and used as a trash room, with an entrance on Dartmouth Street. The trash room is adjacent to unit 1B of the condominium. A garage, also part of the condominium, is situated on the other side of the trash room, at the corner of Dartmouth Street and Back Street.[3] The garage shares one wall with the trash room and it includes six bays for cars, with adjacent storage areas. Three of the parking bays are accessible from Dartmouth Street and the other three are accessible from Back Street.[4] The parking bays are enclosed by doors. A floor plan submitted by the parties shows no useable floor space in the garage not covered by the parking spaces and the storage areas.[5]
The plain language of the condominium master deed dedicates the parking spaces and the storage areas in the garage to the exclusive use of the owners of units 1A, 1B, 2A, 2B, 3A, and 3B.[6] Thus, as the owner of unit 5B, Adato has no right to use the garage for any purpose. Although the trustees claim that Adato derives a "benefit" from the garage, they have produced no evidence of the same.[7] All unit owners, however, enjoy use of the trash room.
In or around 2010, the trustees discovered a sagging beam in the roof of the garage that needed to be repaired or replaced. In 2015, the trustees voted to approve an assessment of $ 400,140 to knock down the garage entirely and to replace it. The garage project included renovation of the trash room.
As the owner of unit 5B, Adato owns a 6.748 per cent interest in the common areas of the condominium. The condominium bylaws state that costs and expenses of maintenance, repair, and replacement of common areas and facilities will be charged to unit owners "in accordance with their respective percentages of their undivided interests in the common areas and common facilities." To date, however, the trustees have only assessed Adato for work on the garage project at a rate of two per cent -- an amount far less than the 6.748 per cent share he would normally owe for common area repairs.
Discussion. The parties disagree about the intended meaning of the condominium documents,[8] which they agree are unambiguous. Neither party seeks to rely on extrinsic evidence as to the meaning of the documents, and neither claims the presence of a genuine dispute of material fact. We are asked to resolve this case based on the texts provided, and we review the motion judge's decision de novo. See Sullivan v. O'Connor, 81 Mass. App. Ct. 200, 204-205 (2012).
The garage is, by definition, part of the condominium "common areas."[9] The master deed states, "The building contains a total of nine residential units, one parking garage with six parking spaces plus one outside parking space, a roof top deck, laundry area and storage facilities" (emphasis added). The master deed goes on to define the condominium "common areas" as consisting of "the land together with the building and improvements thereon but excluding individual residential Units."[10] It is clear from the condominium bylaws that the trustees are charged with "the maintenance, repair and replacement of the common areas and facilities" and, as stated supra, that the costs of all such activities "shall be charged to the Unit Owners in accordance with their respective percentages of their undivided interests in the common areas and common facilities."
The master deed, however, also provides for several categories of "exclusive" areas appurtenant to particular units. In addition to the garage parking and the storage areas, there are storage areas inside the residential portion of the condominium, a roof deck above the garage, balconies, and one outdoor parking space -- each of which is dedicated to the use of a particular unit owner. The master deed goes on to state that "[e]ach Unit Owner shall bear the sole cost of the maintenance and repair of each of such exclusive area as is appurtenant to its Unit."
By designating exclusive use rights in certain areas of the condominium, the master deed plainly created "limited common areas," and placed costs associated with those areas solely on the unit owners holding those exclusive rights.[11] Tosney v. Chelmsford Village Condominium Ass'n, 397 Mass. 683, 687-688 (1986). Belson v. Thayer & Assocs., Inc., 32 Mass. App. Ct. 256, 259-260 (1992).[12] Here, the question is whether the responsibility of each owner with garage rights (hereinafter, "garage owner") extends to a one-sixth share of the cost of maintaining the entire garage structure or is limited only to responsibility for the interior space occupied by his or her assigned parking and storage areas. The trustees urge the latter interpretation. In our view, however, this position is inconsistent with the nature of the garage owners' exclusive rights.
The master deed recognizes the difference between indoor parking and outdoor parking. That is, § 1 refers to a single "outside parking space," which is also part of the "building" (and, thus, the common areas) and is dedicated to the exclusive use of a particular unit owner. The garage owners, however, are granted the exclusive right to "use the parking and storage areas in the parking garage" (emphasis added). In other words, the garage owners have an exclusive right to indoor parking and storage. This is a qualitative difference. Without a structure, the parking spaces would presumably exist as outdoor, unsheltered spaces. Because the exclusive rights held by the garage owners specifically refer to indoor, enclosed parking, however, it follows that these limited common areas are comprised not only of the ground and the floor, but also the surrounding garage structure that encloses the parking and the storage areas.
The trustees argue that reading the master deed in this way impermissibly treats certain words as surplusage. Specifically, they argue that Adato's position improperly ignores the words "the parking and storage areas in the," which are found in § 4 of the master deed, as if the text stated simply that the garage owners have "the exclusive right to use the parking garage." See Computer Sys. of Am., Inc. v. Western Reserve Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437 (1985) ("every word and phrase of a contract should, if possible, be given meaning, and ... none should be treated as surplusage if any other construction is rationally possible"). The text as written, the trustees argue, must mean that the garage owners' exclusive use rights amount to something less than rights in the entire structure because they are limited to use of "the parking and storage areas in the parking garage" (emphasis added).
We disagree. There is an obvious alternative purpose to the words "the parking and storage areas in the," as found in § 4 of the master deed, which is to acknowledge that each garage owner is assigned a particular parking bay and storage area. If the master deed simply stated that the garage owners had the "exclusive right to use the parking garage," those words might imply that any of the six garage owners may park in any of the six parking bays or use any of the six storage areas at any time. This would be unworkable and is plainly not what the drafters intended. Accordingly, construing the master deed as we do does not fail to give meaning to any of its provisions.
The trustees also argue that the condominium declaration of trust requires a different result insofar as its art. 13 states that unit owners are responsible for the maintenance and the repair of the "interior of their respective Units and exclusive areas." We disagree. When read as a whole, art. 13 is not directed at limiting unit owners' obligations; it is directed to the right of a majority of trustees to make necessary repairs to the "interior" of units and exclusive areas if the unit owners have failed to do so. Reading this language as a limitation on the unit owners' responsibility for exclusive use areas would be inconsistent with the master deed designation of the outdoor parking space as just such an area, because an outdoor parking space does not have an interior. It cannot be that the unit owner with exclusive rights to the outdoor parking space has no individual financial responsibility for maintenance of that parking area simply because the declaration of trust uses the word "interior" in the above-quoted provision.[13] It follows that the garage owners' responsibilities under the master deed are also not limited by the same language.
Accordingly, the judgment was correct insofar as it declared that Adato has no obligation to pay for repair or replacement of the garage and should be refunded the assessments he has paid for that purpose.[14] The trustees are correct, however, that the trash room is not an exclusive area and there is no reason Adato should not share in the costs associated with renovating that area.
Thus, so much of the judgment as states by implication that Adato need not contribute to that portion of the garage renovation project that consisted of repair or renovation of the trash room is stricken. We leave to the parties or, if necessary, the trial court the question how to appropriately divide the costs of the project as between costs for the garage and costs for the trash room. The remainder of the judgment is affirmed.
So ordered.
affirmed in part.

The master deed states, "The building consists of an entry floor and five above ground level floors. The building is primarily constructed of stone block and has a stone foundation, wooden floors, marble foyer and a tar and [gravel] roof."

Back Street runs parallel to Storrow Drive and the Charles River.

The Back Street bays are perpendicular to the Dartmouth Street bays.

It is unclear from the floor plans in the record whether there is direct access between the residential portion of the condominium and the trash room, but it appears clear that there is no direct access from the garage to either the trash room or the residential areas.

Specifically, the deed states, "There shall be appurtenant to Units 1A, 1B, 2A, 2B, 3A and 3B the exclusive right to use the parking and storage areas in the parking garage indicated on the floor plans hereinafter mentioned for their respective exclusive uses."

The affidavit of one trustee alleged that the renovation of the garage would "unquestionably enhance the attractiveness of the Condominium building," but this is inadmissible opinion and falls far short of supplying evidence of a measurable benefit to Adato.

The master deed states that all units are conveyed subject to the provisions of the master deed, the condominium trust instrument, and the bylaws.

Here, we part ways with the motion judge, who concluded that the garage is not part of the common areas based on language that was intentionally excised from the master deed, apparently prior to signing. It appears that the words were excised by repeatedly typing the letter "x" over the existing text. We agree with the parties that it was unnecessary for the motion judge to consider the removed language because the master deed, as recorded, is unambiguous insofar as it designates the garage as part of the common areas. See MacDonald v. Jenzabar, Inc., 92 Mass. App. Ct. 630, 634 (2018), citing General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835-836 (2007) (extrinsic evidence as to meaning of contract only admissible where ambiguity exists). See also Krinsky v. Leventhal, 323 Mass. 160, 161-162 (1948) (words stricken from contract may be considered only where remaining words are ambiguous).

This section also states that the common areas include:
"The foundation, structural columns, beams and other structural members of the building; those portions of the exterior and interior walls, ceilings, floor and roof not included as part of the Units; the lobbies, stairways, the entrances and exits and the elevators and other mechanical equipment servicing the building, except for any such equipment which exclusively services any Unit ... [and]
"All roof decks, terraces and balconies, if any, provided however each Unit Owner whose Unit has sole direct access to any such terrace or balcony from the interior of this Unit shall have an easement for the exclusive use of such terrace or balcony."

The parties agree on this point, and an amendment to the master deed refers specifically to "limited common areas."

In 1994 a definition of limited common areas was inserted into the Commonwealth's condominium statute, G. L. c. 183A, § 1. See St. 1994, c. 365, § 1. That provision was amended in 1998. See St. 1998, c. 242, § 3. With one exception not relevant here, the 1998 amendments to the condominium law were made applicable to all master deeds, whether or not recorded prior to the effective date thereof. See St. 1998, c. 242, § 11.

The record does not disclose whether the balconies or the roof decks in the condominium have an interior. We note, however, that the master deed suggests that these exclusive use areas are outdoor spaces insofar as they refer to a unit owner's access to a terrace or balcony "from the interior" of his or her unit.

We note that this outcome is consistent with the outcome of prior litigation involving this same condominium. See Buckland vs. 234 Beacon St. Condominium Trust, Sup. Ct., No. 0984CV02789, (Dec. 29, 2010), in which a different judge ordered that certain unit owners were required to pay the entire cost of repairs to a balcony in which they had exclusive rights, notwithstanding that (1) balconies, like the garage, are defined as common areas and (2) other unit owners had the right to traverse the balcony to reach a fire escape.